IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| D.S. Ridgeside, Inc., Brendon Park Associates, LLC, D.S. Poplar Village, Inc., Windover DE, LLC, and South Wind Apartments, LLC, individually and on behalf of all similarly-situated entities, | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) Civil No.: _____ |
| v. | ) CLASS ACTION COMPLAINT |
| CSC ServiceWorks, Inc., individually and as successor to Coinmach Corporation, Mac-Gray Services, Inc., and Mac-Gray Services, LLC, as a subsidiary of Coinmach Corporation | )<br>)<br>)<br>)<br>) |
| Defendants. | ) |

## CLASS ACTION COMPLAINT

## INTRODUCTION

1. Plaintiffs D.S. Ridgeside, Inc., Brendon Park Associates, LLC, D.S. Poplar Village, Inc., Windover DE, LLC, and South Wind Apartments, LLC (collectively, "Plaintiffs") bring this lawsuit on behalf of themselves and all similarly situated entities for breach of leases pursuant to Rule 23 of the Federal Rules of Civil Procedure against CSC ServiceWorks, Inc., individually and as successor in interest to Coinmach Corporation (collectively "CSC ServiceWorks"), and Mac-Gray Services, Inc. ("Mac-Gray Services").

2. Defendants have breached their Leases[1] ("Leases") with Plaintiffs and all other CSC ServiceWorks' and Mac-Gray Services' lessors in the State of Tennessee (the "Class" or

---

[1] "Leases" also include Laundry Room Lease Agreements or other similarly titled agreements entered into between CSC ServiceWorks and Mac-Gray Services with similarly situated entities to Plaintiffs.

"Class Members"), by unilaterally modifying its Leases and deducting a 9.75% Administrative Fee (hereinafter "Administrative Fee") from its rental obligations owed to Plaintiffs and Class Members.

3. Neither Plaintiffs nor the Class Members agreed to pay this Administrative Fee and this Administrative Fee was never included in the terms of the Leases with CSC ServiceWorks or Mac-Gray Services.

## PARTIES

### PLAINTIFFS

4. Plaintiff D.S. Ridgeside, Inc. ("Ridgeside") is a Tennessee corporation having its principal place of business in Tennessee. Ridgeside owns Ridgeside Apartments at 6320 Hixson Pike, in Hixson, Tennessee.

5. Plaintiff Brendon Park Associates, LLC ("Brendon Park") is a Tennessee limited liability company having its principal place of business in Tennessee. Brendon Park owns Brendon Park Apartments located at 9123 Grayland Drive in Knoxville, Tennessee.

6. Plaintiff D.S. Poplar Village, Inc. ("Poplar Village") is a Tennessee corporation having its principal place of business in Tennessee. Poplar Village owns the Poplar Village apartment complex located at 1414 Poplar Avenue in Murfreesboro, Tennessee.

7. Plaintiff Windover DE, LLC ("Windover") is a Delaware limited liability company having its principal place of business in Tennessee. Windover owns Windover Apartments complex located at 301 Cheshire Drive in Knoxville, Tennessee. Windover DE, LLC is the successor to Windover, LLC.

8. Plaintiff South Wind Apartments, LLC ("South Wind") is a Tennessee limited liability company having its principal place of business in Tennessee. South Wind owns South

Wind Apartments at 549 Southwinds Drive, Franklin, Tennessee. South Wind Apartments, LLC is the successor to G&I IV South Wind, LP.

## DEFENDANTS

9. Defendant CSC ServiceWorks, Inc. ("CSC ServiceWorks") is a Delaware corporation authorized to and doing business in many states, including Tennessee. CSC ServiceWorks' corporate headquarters is located at 303 Sunnyside Boulevard, Suite 70, Plainview, New York 11803. CSC ServiceWorks also maintains an office at 800 Longview Road, Knoxville, Tennessee 37115.

10. CSC ServiceWorks can be served through its registered agent, CT Corporation System located at 300 Montvue Road, Knoxville, Tennessee 37919-5546.

11. CSC ServiceWorks is a successor to Coinmach Corporation ("Coinmach"), a Delaware corporation that was authorized to do business in many states, including Tennessee.

12. Defendant Mac-Gray Services, Inc. ("Mac-Gray Services") is a Delaware corporation authorized to and doing business in many states, including Tennessee. Mac-Gray Services' corporate headquarters is located at 303 Sunnyside Boulevard, Suite 70, Plainview, New York 11803.

13. Mac-Gray Services can be served through its registered agent, Corporation Services Company located at 2908 Poston Avenue, Tennessee 37203-1312.

14. On its website, CSC ServiceWorks describes itself as follows:

> With over one million machines in service, CSC ServiceWorks is the leading provider of multifamily residential and commercial laundry solutions, as well as tire inflation and vacuum vending services at convenience stores and gas stations alike nationwide.
>
> Our family of companies includes: Coinmach, Mac-Gray, Air Valet, Appliance Warehouse, ASI Campus Laundry Solutions, Super Laundry, Kwik Wash, SDi Laundry Solutions, AIR-serv and Sparkle Solutions.

United, our companies are comprised of over 3,000 dedicated CSC ServiceWorks professionals throughout the United States, Canada and Europe.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000.

16. This Court has specific, personal jurisdiction over Defendants because: a) Defendants purposefully conducted activities in the Middle District of Tennessee (and throughout the State of Tennessee) and this litigation resulted from leases Defendants entered into in the Middle District of Tennessee (and throughout the State of Tennessee); b) Defendants purposefully availed themselves of the privilege of conducting business in the Middle District of Tennessee by entering into Leases with Tennessee citizens; c) Defendants' contacts in the Middle District of Tennessee have a substantial enough connection to make this Court's exercise of jurisdiction over them reasonable; and d) Defendants have consented to this Court's exercise of jurisdiction in accordance with the terms of certain Leases.

17. Venue is proper in the Middle District of Tennessee under 28 U.S.C. §1391.

## FACTUAL ALLEGATIONS

18. Plaintiff Ridgeside entered into a Lease with CSC ServiceWorks, Inc. on February 9, 2016. A true and correct copy of the Lease is attached as **Exhibit A**.

19. The Lease attached as **Exhibit A** is for a seven-year term and commenced on April 20, 2016, or the date of installation of Equipment as defined in the Lease. *See* **Exhibit A**.

20. The Lease sets forth the financial arrangements between Ridgeside and CSC ServiceWorks. Specifically, Paragraph 1 of the Lease attached as **Exhibit A** states: "Lessee

[CSC ServiceWorks, Inc.] will pay as rent to Lessor [Ridgeside] 50% of the gross collected revenues per month from the Equipment less: refunds to users, credit/debit card fees, any applicable local, state and/or federal sales, use, occupational, mercantile, excise, stamp, rental and/or personal property tax and/or license fee, any and all taxes and/or fees attributable to or assessed against the Equipment or services rendered in relation to the Equipment other than taxes or fees based solely on Lessee's net income or net worth and any expenses attributable to vandalism. Rent shall be paid monthly to the address specified in the Notices section of this Lease. On-site counting will be provided, at Lessor's request, at a charge of 5% of collection." *See* **Exhibit A, Para. 1**.

21. Additionally, Paragraph 5 of the Lease attached as **Exhibit A** provides, in relevant part: "Lessor agrees that in the event the Equipment is vandalized or subjected to theft or attempted theft, Lessee may repair the Equipment and deduct the cost of such repairs from the rent provided that Lessor is notified in advance of the cost of such repairs. In addition, Lessee may notify Lessor in writing of the problem and recommend prevention measures; in the event Lessor does not substantially complete prevention measures with 15 days of such written notice, Lessee may terminate the lease. In no event shall the Lessee be deemed to have committed a breach hereunder unless it shall have written notice of Equipment, service or repair problems and shall have had a reasonable opportunity to cure same. Notwithstanding the foregoing, Lessor shall bear no responsibility or liability for any maintenance, damage, or loss of Equipment." *See* **Exhibit A, Para. 5**.

22. Paragraph 9 of the Lease attached as **Exhibit A** states: "In the event any action is instituted to enforce any provision of this Lease, the prevailing party shall be entitled to reasonable attorney fees, court costs and expenses." *See* **Exhibit A, Para. 9**.

23. The Lease attached as **Exhibit A** is a valid contract that was entered into between parties capable of contracting and contained mutual obligations and valid consideration.

24. Plaintiff Brendon Park entered into a Lease with Mac-Gray Services, Inc. on June 12, 2013. A true and correct copy of this Lease is attached as **Exhibit B**.

25. The Lease attached as **Exhibit B** is for a seven-year term that commenced on July 12, 2013, or the date of installation of Equipment as defined in the Lease. *See* **Exhibit B**.

26. The Lease sets forth the financial arrangements between Brendon Park and Mac-Gray Services. Specifically, Paragraph 3 of the Lease attached as **Exhibit B** states: "Lessee [Mac-Gray Services, Inc.] agrees to pay Lessor [Brendon Park] as rent (the "Rent") from the income of the Equipment, Monthly in arrears, an amount equal to: 55% of revenue, paid Monthly, less cost of 50% credit/debit card transaction processing fees, refunds, expenses attributable to vandalism on the Equipment, 50% of internet air card charges for change point system. Lessor agrees that Lessee shall have the right to determine the amount of Equipment to be installed and the price of each machine cycle." *See* **Exhibit B, Para. 3** (emphasis in original).

27. Paragraph G under General Terms and Conditions of Lease attached as **Exhibit B** states: "In the event of a material breach of the Lease by either party, the non-breaching party shall be entitled to declare the Lease terminated and shall be entitled to recover damages, including but not limited to incidental and consequential damages the non-breaching party may be entitled to recover. Failure to exercise this provision shall not constitute a waiver of either party's causes of action under this Lease or otherwise. The prevailing party shall be entitled to recover all costs and reasonable attorney's fees incurred to enforce the Lease." *See* **Exhibit B, Para. G under General Terms and Conditions** (emphasis in original).

28. The Lease attached as **Exhibit B** is a valid contract that was entered into between parties capable of contracting and contained mutual obligations and valid consideration.

29. Plaintiff Poplar Village entered into a Lease with CSC Serviceworks, on May 10, 2016. A true and correct copy of this Lease is attached as **Exhibit C**.

30. The Lease attached as **Exhibit C** is for a seven-year term that commenced on June 1, 2016, or the date of installation of Equipment as defined in the Lease. *See* **Exhibit C**.

31. The Lease sets forth the financial arrangements between Poplar Village and CSC Serviceworks. Specifically, Paragraph 1 of the Lease attached as **Exhibit C** states: "Lessee [CSC Serviceworks, Inc.] will pay rent to Lessor [D.S. Poplar Village, Inc.] 50% of the gross collected revenues per month from the Equipment less: refunds to users, any applicable local, state and/or federal sales, use, occupational, mercantile, excise, stamp, rental and/or personal property tax and/or license fee, any and all taxes and/or fees attributable to or assessed against Equipment or services rendered in relation to the Equipment other than taxes or fees based solely on Lessee's net income or net worth and any expenses attributable to vandalism. Rent shall be paid monthly to the address specified in the Notices section of this Lease. On-site counting will be provided, at Lessor's request, at a charge of 5% of collection." *See* **Exhibit C, Para. 1**.

32. Additionally, Paragraph 5 of the Lease attached as **Exhibit C** provides, in relevant part: "Lessor agrees that in the event the Equipment is vandalized or subjected to theft or attempted theft, Lessee may repair the Equipment and deduct the cost of such repairs from the rent provided that Lessor is notified in advance of the cost of such repairs. In addition, Lessee may notify Lessor in writing of the problem and recommend prevention measures; in the event Lessor does not substantially complete prevention measures with 15 days of such written notice, Lessee may terminate the lease. In no event shall the Lessee be deemed to have committed a

breach hereunder unless it shall have written notice of Equipment, service or repair problems and shall have had a reasonable opportunity to cure same. Notwithstanding the foregoing, Lessor shall bear no responsibility or liability for any maintenance, damage, or loss of Equipment." *See* **Exhibit C, Para. 5**.

33. Paragraph 9 of the Lease attached as **Exhibit C** states: "In the event any action is instituted to enforce any provision of this Lease, the prevailing party shall be entitled to reasonable attorney fees, court costs and expenses." *See* **Exhibit C, Para. 9**.

34. The Lease attached as **Exhibit C** is a valid contract that was entered into between parties capable of contracting and contained mutual obligations and valid consideration.

35. Plaintiff Windover entered into a Lease with Mac-Gray Services, Inc. on April 18, 2013. A true and correct copy of this Lease is attached as **Exhibit D**.

36. The Lease attached as **Exhibit D** is for a seven-year term that commenced on May 18, 2013, or the date of installation of Equipment as defined in the Lease. *See* **Exhibit D**.

37. The Lease sets forth the financial arrangements between Windover and Mac-Gray Services. Specifically, Paragraph 1 of the Lease attached as **Exhibit D** states: "Lessee [Mac-Gray Services, Inc.] will pay as rent to Lessor [Windover] 50% of the gross collected revenues per month from the Equipment less: refunds to users, any applicable local, state and/or federal sales, use, occupational, mercantile, excise, stamp, rental and/or personal property tax and/or license fee, any and all taxes and/or fees attributable to or assessed against Equipment or services rendered in relation to the Equipment other than taxes or fees based solely on Lessee's net income or net worth and any expenses attributable to vandalism. Rent shall be paid monthly to the address specified in the Notices section of this Lease. On-site counting will be provided, at Lessor's request, at a charge of 5% of collection." *See* **Exhibit D, Para. 1**.

38. Additionally, Paragraph 5 of the Lease attached as **Exhibit D** provides, in relevant part: "Lessor agrees that in the event the Equipment is vandalized or subjected to theft or attempted theft, Lessee may repair the Equipment and deduct the cost of such repairs from the rent provided that Lessor is notified in advance of the cost of such repairs. In addition, Lessee may notify Lessor in writing of the problem and recommend prevention measures; in the event Lessor does not substantially complete prevention measures with 15 days of such written notice, Lessee may terminate the lease. In no event shall the Lessee be deemed to have committed a breach hereunder unless it shall have written notice of Equipment, service or repair problems and shall have had a reasonable opportunity to cure same. Notwithstanding the foregoing, Lessor shall bear no responsibility or liability for any maintenance, damage, or loss of Equipment." *See* **Exhibit D, Para. 5**.

39. Paragraph 9 of the Lease attached as **Exhibit D** states: "In the event any action is instituted to enforce any provision of this Lease, the prevailing party shall be entitled to reasonable attorney fees, court costs and expenses." *See* **Exhibit D**.

40. The Lease attached as **Exhibit D** is a valid contract that was entered into between parties capable of contracting and contained mutual obligations and valid consideration.

41. Plaintiff SouthWind entered into a Lease with Coinmach Corporation on October 10, 2011. A true and correct copy of this Lease is attached as **Exhibit E**.

42. The Lease attached as **Exhibit E** is for a seven-year term that commenced on December 5, 2011, or the date of installation of Equipment as defined in the Lease. *See* **Exhibit E**.

43. The Lease sets forth the financial arrangements between SouthWind and Coinmach Corporation. Specifically, Paragraph 2 of the Lease attached as **Exhibit E** states:

"Lessee [Coinmach Corporation] will pay as rent for the Premises the sum of 40% of the all revenue Lessee earns from the Complex thereafter, less: refunds to users, any applicable local, state and/or federal sales, use, occupational, mercantile, excise, stamp, rental and/or personal property tax and/or license fee, any and all taxes and/or fees attributable to or assessed against the Equipment or services rendered in relation to the Equipment other than taxes or fees based solely on Lessee's net income or net worth, any processing fees when applicable and any expenses directly attributable to vandalism. Rent shall be paid monthly in arrears by no later than the 10th day of each month to the address specified in the Notices section of this Lease. The percentage of commission by property will increase by .5% for every 5% increase in monthly income over an average monthly gross income of $460.00, adjusted annually. On-site counting will be provided, at Lessor's request, up to four times annually at no charge. If during the term of this Lease, vacancies on the fifteenth day of a calendar month exceed 13% or greater, Lessee may reduce the rent due by 10% of the monies. For every additional 10% in vacancies on the fifteenth day of a calendar month, Lessee may reduce the rent due by an additional 10% of the monies." *See* **Exhibit E, Para. 2**.

44. Additionally, Paragraph 6 of the Lease attached as **Exhibit E** provides, in relevant part: "Lessor agrees that in the event the Equipment is vandalized or subjected to theft or attempted theft; Lessee may repair the Equipment and, after submitting to Lessor satisfactory evidence of the costs of the repairs due to the vandalism and that the such costs were paid by Lessee, deduct the cost of such repairs form the rent. In addition, Lessee may notify Lessor in writing of the problem and recommended prevention measures." *See* **Exhibit E, Para. 6**.

45. Paragraph 15 of the Lease attached as **Exhibit E** states: "In the event of legal action or litigation by Lessor or Lessee, the prevailing party's legal fees and expenses shall be immediately paid and reimbursed by the other party." *See* **Exhibit E, Para. 15**.

46. The Lease attached as **Exhibit E** is a valid contract that was entered into between parties capable of contracting and contained mutual obligations and valid consideration.

47. On or around May 17, 2017, Mark Hjelle, the Chief Executive Officer of CSC ServiceWorks sent a letter to customers of CSC ServiceWorks and its subsidiaries, advising that CSC ServiceWorks, on behalf of itself and its subsidiaries, was unilaterally modifying the terms and conditions of the Leases it had entered into by imposing a 9.75% Administrative Fee that would be deducted from its customers' gross collections. A copy of this letter is attached as **Exhibit F**.

48. In the letter dated May 17, 2017, Mr. Hjelle stated: "We have made and will continue to make significant investments in our people, systems, technology and service delivery, as well as maintaining a commitment to security and sustainability; but we are also facing increased costs in nearly every aspect of our business. In the past, we have offset some of these costs with efficiency improvements and by leveraging our scale, but we are no longer able to absorb these costs alone." *See* **Exhibit F**.

49. In the letter dated May 17, 2017, Mr. Hjelle also stated: "Beginning this month, you will see an Administrative Fee of 9.75% (or approximately .10 cents per day, per machine), deducted from your gross collections. This deduction will help to offset costs related to taxes, vandalism and applicable administrative and other costs. As a benefit to you, going forward you will receive coverage for events related to vandalism (up to $200 per event). For more

information about the Administrative Fee as well as additional benefits you will receive as a CSC customer, visit our website at http://www.cscsw.com/feetransparency/. *See* **Exhibit F**.

50. In the next paragraph of the May 17, 2017 letter, Mr. Hjelle stated: "CSC will also waive any potential claims to recoup its costs related to taxes, vandalism or applicable administrative or other costs which CSC incurred in the past and was entitled to deduct, but did not." *See* **Exhibit F**.

51. None of the Leases attached as **Exhibits A – E** contain language or terms permitting Defendants to unilaterally modify said Leases or the change the original terms of said Leases.

52. The Administrative Fee includes costs and items that Defendants are not permitted to deduct from Plaintiffs and Class Members pursuant to the terms of the Leases. Defendants have unilaterally changed the terms of its Leases with Plaintiffs and Class Members in order to pay its own costs.

53. Upon information and belief, CSC ServiceWork's imposition of the Administrative Fee was done on behalf of itself and Mac-Gray Services.

54. The decision to unilaterally modify all Leases, and materially change the terms of same, was an intentional act by Defendants to breach the terms of the Leases Defendants entered into with Plaintiffs and Class Members.

55. Upon information and belief, Defendants knew they could not unilaterally modify the terms of the Leases they entered into, but opted to do so anyway, via the May 17, 2017 letter, in hopes no one would challenge this material breach.

56. The imposition of this 9.75% Administrative Fee was a unilateral change to the Leases in order to reduce payments under the revenue-sharing agreements entered into by the Plaintiffs and the Class Members as codified in the Leases.

57. Upon information and belief, CCS ServiceWorks sent out all the checks to its customers and the customers of Mac-Gray Services, pursuant to the terms of the Leases.

58. CSC ServiceWorks sent a check for $1,465.79 dated October 12, 2017 to D.S. Ridgeside. According to the summary, the gross collection from July 24, 2017 through September 28, 2017 was $3,312.81. CSC ServiceWorks assessed a 9.75% Administrative Fee over the gross collections in the amount of $323.00, and then evenly divided the net commission between CSC ServiceWorks and D.S. Ridgeside. A copy of this check and summary is attached as **Exhibit G**.

59. The assessment of the 9.75% Administrative Fee violates the terms and conditions of the Lease CSC ServiceWorks entered into with D.S. Ridgeside.

60. CSC ServiceWorks sent a check for $694.30 dated July 13, 2017 to Brendon Park Associates for the collection period of May 28, 2017 to June 25, 2017 in which the 9.75% Administrative Fee was assessed. According to the summary, the gross collection from May 28, 2017 through June 25, 2017 was $1,402.95. A 9.75% Administrative Fee over the gross collections in the amount of $140.59 was assessed. A copy of this summary is attached as **Exhibit H.**

61. The assessment of the 9.75% Administrative Fee violates the terms and conditions of the Lease Mac-Gray Services, Inc. entered into with Brendon Park Associates.

62. CSC ServiceWorks sent a check for $608.45 dated October 12, 2017 to Poplar Village for the collection period of August 27, 2017 through September 24, 2017 in which the

9.75% Administrative Fee was assessed. According to the summary, the gross collection from August 27, 2017 through September 24, 2017 was $1,348.35. A 9.75% Administrative Fee over the gross collections in the amount of $131.46 was assessed. A copy of this summary is attached as **Exhibit I**.

63. The assessment of the 9.75% Administrative Fee violates the terms and conditions of the Lease CSC Serviceworks, Inc. entered into with Poplar Village.

64. CSC ServiceWorks sent a check for $931.65 dated October 12, 2017 to Windover LLC c/o Windover Apts for the collection period of August 27, 2017 through September 24, 2017 in which the 9.75% Administrative Fee was assessed. According to the summary, the gross collection from August 27, 2017 through September 24, 2017 was $2,097.84. A 9.75% Administrative Fee over the gross collections was assessed in the amount of $204.50. A copy of this summary is attached as **Exhibit J.**

65. The assessment of the 9.75% Administrative Fee violates the terms and conditions of the Lease Mac-Gray Services, Inc. entered into with Windover.

66. CSC ServiceWorks sent a check for $327.09 dated December 29, 2017 to South Wind for the collection period of October 29, 2017 to November 26, 2017. According to the summary, the gross collection from October 29, 2017 through November 26, 2017 was $915.77. A 9.75% Administrative Fee over the gross collections was assessed in the amount of $89.29. A copy of this summary is attached as **Exhibit K.**

67. The assessment of the 9.75% Administrative Fee violates the terms and conditions of the Lease CSC Serviceworks, Inc. entered into with South Wind.

# CLASS ACTION ALLEGATIONS UNDER RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

68. Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1-67 herein.

69. Plaintiffs bring this action on their own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following Class:

> All Tennessee lessors who entered into lease agreements with CSC ServiceWorks, its subsidiaries and/or Mac-Gray Services, who were charged with a 9.75% Administrative Fee from gross collections by CSC ServiceWorks and/or Mac-Gray.

70. Plaintiffs are members of the Class they seek to represent.

71. The Class is sufficiently numerous that joinder of all Class Members is impractical, satisfying Fed. R. Civ. P. 23(a)(1).

72. All Class Members share the same pivotal questions of law and fact, thereby satisfying Fed. R. Civ. P. 23(a)(2). Specifically, all Class Members share the question of whether Defendants' actions of unilaterally imposing a 9.75% Administrative Fee which is automatically deducted from gross collections constitutes a breach of their lease agreements with Class Members.

73. Plaintiffs' claims are typical of the claims of the Class, thus satisfying Fed. R. Civ. P. 23(a)(3). Specifically, as evidenced by the May 17, 2017 letter attached as **Exhibit F**, Defendants unilaterally modified their Leases with Class Members by imposing a 9.75% Administrative Fee to be deducted from gross collections contrary to the terms and conditions of the Lease agreements they previously entered into with Class Members.

74. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Further, Plaintiffs have retained competent counsel experienced in prosecuting class action cases, including consumer class action cases, thus satisfying Fed. R. Civ. P. 23(a)(4).

75. Defendants have acted on grounds that apply generally to the Class. Specifically, Defendants have unilaterally changed the terms of the Leases with Plaintiffs and Class Members by imposing the 9.75% Administrative Fee that is automatically deducted from the gross collection of revenues collected pursuant to said Leases. Defendants' conduct constitutes a material breach of the Leases between Defendants and Plaintiffs/Class Members. Defendants' illegal conduct continues, and will continue, unless enjoined by this Court. Based on the foregoing, final injunctive or corresponding declaratory relief is appropriate for the Class as a whole under Fed. R. Civ. P. 23(b)(2).

76. By unilaterally modifying their Leases with Class Members by imposing the 9.75% Administrative Fee that is automatically deducted from gross collections, Defendants have created a scenario where questions of law and fact common to Class Members predominate over any questions affecting only individual Class Members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiffs are entitled to pursue their claims as a class action, pursuant to Fed. R. Civ. P. 23(b)(3).

77. Upon information and belief, Defendants have assessed in excess of $75,000 in Administrative Fees from Plaintiffs and Class Members after Defendants unilaterally modified the terms of their Leases.

## CAUSE OF ACTION ONE:
### (BREACH OF CONTRACT)

78. Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1-77 herein.

79. Plaintiffs bring this claim on behalf of themselves and all Class Members.

80. Plaintiffs and all Class Members entered into Leases with Defendants to supply laundry equipment to multi-family, condominium, and co-op properties across the country whereby Defendants agreed to provide the equipment for use in Plaintiffs' and Class Members' facilities in exchange for splitting the revenues generated from the equipment located at Plaintiffs' and Class Members' properties in accordance with the Leases between the parties.

81. The Leases were made between parties capable of contracting and contained mutual obligations and valid consideration.

82. Plaintiffs and Class Members have performed all conditions precedent, if any, required of them under the Leases.

83. Defendants failed to perform their obligations in accordance with the terms and conditions of the Leases agreements by unilaterally imposing a 9.75% Administrative Fee that has been automatically deducted from gross revenues in breach of the terms and conditions of the Leases previously entered into between the parties.

## CAUSE OF ACTION THREE:
## (UNJUST ENRICHMENT)

84. Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1-83 herein.

85. Defendants obligated to pay Plaintiffs and Class Members their share of the revenue generated at Plaintiffs' and Class Members' facilities pursuant to the Leases they entered into without the unilateral imposition of a 9.75% Administrative Fee.

86. Because of the wrongful activities described above, Defendants have retained money belonging to Plaintiffs and Class Members that it unjustly withheld.

87. Defendants were aware of and appreciated the benefits conferred upon it by Plaintiffs and Class Members.

## CAUSE OF ACTION FOUR:
### (DECLARATORY JUDGMENT)

88. Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1-87 herein.

89. Defendants have clearly breached the terms of the Leases with Plaintiffs and all Class Members. Under the facts and circumstances of this case as set forth herein, the Court should declare that these Leases were breached pursuant to 28 U.S.C. § 2201.

## CAUSE OF ACTION FIVE:
### (INJUNCTIVE RELIEF)

90. Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1-89 herein.

91. As stated above, Defendants are presently deducting a 9.75% Administrative Fee from gross revenues of Plaintiffs and Class Members in violation of the terms and conditions of the Leases they entered into with Plaintiffs and Class Members.

92. Unless Defendants are permanently enjoined and/or ordered by the Court to refrain from deducting this 9.75% Administrative Fee, Defendants will continue to violate the terms and conditions of the Leases they entered into with Plaintiffs and Class Members.

93. Defendant should be permanently restrained and enjoined from deducting this 9.75% Administrative Fee from monies due and owing to Plaintiffs and Class Members who have operative Leases that do not permit such a taking.

94.     Plaintiffs respectfully request this Court to issue an order restraining Defendants from deducting this 9.75% Administrative Fee from monies due and owing to Plaintiffs and Class Members who have operative Leases that do not permit such a taking.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for the following relief:

A.     Acceptance of jurisdiction of this cause;

B.     Certification of this case as a class action under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(2);

C.     In addition to or in the alternative, certification of this case as a class action maintained under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(b)(3);

D.     In addition to or in the alternative, certification of this case as a class action under Fed. R. Civ. P. 23(a) and Fed. R. Civ. P. 23(c)(4);

E.     Designation of Plaintiffs and representatives of the Class, and their counsel of record as Class counsel;

F.     A judgment against Defendants and in favor of Plaintiffs and Class Members for all monies impermissibly deducted by Defendants pursuant to the 9.75% Administrative Fee;

G.     An order requiring Defendants to disgorge their profits earned as a result of their wrongful conduct and ordering them to make a restitution to Plaintiffs and the Class Members for their unjust enrichment;

H.     A declaratory judgment that Defendants breached their Leases with Plaintiffs and Class Members by deducting the 9.75% Administrative Fee from the gross revenues collected;

I. An order enjoining Defendants from continuing to breach its Leases with Plaintiffs and Class Members by deducting the 9.75% Administrative Fee from the gross revenues collected;

J. Litigation costs, expenses, and Plaintiffs' attorneys' fees to the fullest extent permitted under the Leases;

K. Prejudgment interest to the fullest extent permitted under the law; and,

L. Such other, further legal and equitable relief that the Court may deem just and proper.

Submitted: February 7, 2018.

**DICKINSON WRIGHT PLLC**

By: */s/ M. Reid Estes, Jr.*
M. Reid Estes, Jr. #9043
Martin D. Holmes, #12112
Joshua L. Burgener, #29077
424 Church Street, Suite 800
Nashville, TN 37219
(615) 244-6538
restes@dickinson-wright.com
mdholmes@dickinson-wright.com
jburgener@dickinson-wright.com

**BEASLEY LAW, PLLC**

By: */s/ Judith E. Beasley*
Judith E. Beasley, #14084
301 51st Ave. North
Nashville, TN 37209

Attorneys for Plaintiffs

NASHVILLE 51880-3 629323v1

20

Case 3:18-cv-00126   Document 1   Filed 02/07/18   Page 20 of 20 PageID #: 20